A-489-833<br>
Remand Redetermination<br>
CIT 19-00056; CAFC 20-2014<br>
POI:  01/01/2017 – 12/31/2017<br>
**Public Document**<br>
E&C/OII:  WAM

*Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*
Consol. Court No. 19-00056 (CIT August 26, 2021 and October 5, 2021)

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

**I.     SUMMARY**

The Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the remand orders of the U.S. Court of International Trade (CIT or the Court) for further proceedings consistent with the opinion issued by the U.S. Court of Appeals for the Federal Circuit (CAFC) in *Borusan III*.[1]  In *Borusan III*, the CAFC reversed the CIT's judgment in *Borusan II*,[2] sustaining Commerce's First Redetermination Results[3] for the purposes of the final determination in the less-than-fair-value (LTFV) investigation on large diameter welded pipe (LDWP) from the Republic of Turkey (Turkey).[4]  In its First Redetermination Results, Commerce, under protest, granted respondent Borusan Mannesmann

---

[1] *See Borusan Mannesmann Boru Sanayi ve Ticaret A.S., et al. v. American Cast Iron Pipe Company, et al.*, 5 F.4th 1367 (Fed. Cir. 2021) (*Borusan III*); *see also Borusan Mannesmann Boru Sanayi ve Ticaret A.S., et al. v. United States*, Consol. Court No. 19-00056, CIT Order at 1 (CIT 2021) (*Remand Order*); and *Borusan Mannesmann Boru Sanayi ve Ticaret A.S., et al. v. United States*, Consol. Court No. 19-00056, CIT Order 2 at 1 (CIT 2021) (*Extension*).
[2] *See Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, Consol. Court No. 19-00056, Slip Op. 20-71 (CIT 2020) (*Borusan II*); *see also Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States*, 426 F. Supp. 3d 1395 (CIT 2020) (*Borusan I*).
[3] *See* Final Results of Redetermination Pursuant to Court Remand, Consol. Court No. 19-00056, dated March 9, 2020 (First Redetermination Results).
[4] *See Large Diameter Welded Pipe from the Republic of Turkey:  Final Determination of Sales at Less Than Fair Value*, 84 FR 6362 (February 27, 2019) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM), as amended by *Large Diameter Welded Pipe from the Republic of Turkey:  Amended Final Affirmative Antidumping Duty Determination & Antidumping Duty Order*, 84 FR 18799 (May 2, 2019).

Boru Sanayi ve Ticaret A.S. (Borusan) the full amount of a post-sale price adjustment, as claimed by Borusan in the company's home market sales data. This resulted in a *de minimis* estimated weighted-average dumping margin for Borusan, which resulted in Borusan's exclusion from the antidumping duty order. Consequently, Commerce did not reach the additional issues.[5]

Consistent with *Borusan III* and the *Remand Order*, on remand, Commerce has reverted to its decision to grant Borusan a partial post-sale price adjustment. Additionally, Commerce reexamined issues previously rendered moot for purposes of the First Redetermination Results,[6] specifically: (1) removal of an adjustment to Borusan's costs of production based on a finding of a cost-based particular market situation (PMS) for purposes of the sales-below-cost test; and (2) reconsideration of Borusan's U.S. date of sale. Given that the removal of the cost-based PMS adjustment results in an estimated weighted-average dumping margin of zero percent for Borusan, and that the estimated weighted-average dumping margin would not increase if Commerce were to address the issue concerning the U.S. date of sale, Commerce does not reach that issue for purposes of these final results of redetermination.[7] Finally, this change to Borusan's estimated weighted-average dumping margin does not change the all-others rate from the First Redetermination Results, which continues to be 2.57 percent.

## II.   BACKGROUND

Commerce published the *Final Determination* on February 27, 2019.[8] As discussed in the *Final Determination*, Commerce granted Borusan a post-sale price adjustment for certain home market sales; however, Commerce recalculated the amount of that adjustment based on an

---

[5] *See* First Redetermination Results at 1-2.
[6] *Id.*
[7] *See Roses Inc. v. United States*, 774 F. Supp. 1376 (CIT 1991) (*Roses*).
[8] *See Final Determination*.

agreement that predated the filing of the petition.⁹  Additionally, Commerce based the date of sale for Borusan's U.S. sales on the earlier of shipment or invoice date because, although Borusan claimed that the purchase order date was the appropriate date of sale, Borusan's purchase orders were subject to multiple revisions and Borusan was unable to explain when the terms of its purchase orders were final.¹⁰  Commerce also found that a cost-based PMS existed in Turkey that distorted the price of hot-rolled coil (HRC) used to produce LDWP, and, as a result, Commerce adjusted Borusan's cost of production (COP) for the purposes of the sales-below-cost test.¹¹  The domestic interested parties and Borusan subsequently contested, at the CIT, Commerce's *Final Determination* with respect to each of these issues.

In *Borusan I*, the CIT remanded the *Final Determination* to Commerce, concluding that:

(1) Commerce's recalculation of Borusan's post-sale price adjustment was not supported by substantial evidence.¹²  According to the Court, Commerce failed to provide evidence to suggest an improper manipulation of the adjustment, and the contract documents on the record do not support Commerce's reallocation.¹³  Therefore, the Court remanded for Commerce to review the documents and to allow a post-sale price adjustment for the amount for which Borusan established it was liable and actually paid, unless Commerce had additional evidence that shows an improper allocation;¹⁴

(2) Commerce's cost-based PMS adjustment to the reported cost of HRC for purposes of a sales-below-cost test was unlawful.¹⁵  The Court stated that, on remand, Commerce may not adjust the COP based on a PMS for purposes of the sales-below-cost test because Commerce did

---

⁹ *See Final Determination* IDM at Comment 3.
¹⁰ *Id*. at Comment 2.
¹¹ *Id.* at Comment 1.
¹² *See Borusan*, 426 F. Supp. at 1410.
¹³ *Id.*
¹⁴ *Id.*
¹⁵ *Id.* at 1410-1412.

not: (a) employ the definition of ordinary course of trade in section 771(15) of the Tariff Act of 1930, as amended, to exclude from the pool of home market sales those that would distort the LTFV comparison due to a PMS; or (b) determine that the pool of home market sales was insufficient for LTFV comparison purposes;[16] and

(3) Commerce's decision to use the earlier of invoice date or shipment date for Borusan's U.S. date of sale was improper.[17] The Court found that Commerce did not examine fully whether Borusan's contracts for its U.S. sales were long-term or involved custom goods.[18] Thus, the Court remanded for Commerce to determine whether: (a) the regulatory presumption in favor of invoice date governs; and (b) the material terms of the contract were essentially fixed before invoice date.[19]

On remand, Commerce, under protest, granted Borusan the full amount of the post-sale price adjustment, as claimed in the company's home market sales data. Because this change resulted in a *de minimis* estimated weighted-average dumping margin for Borusan, Commerce did not reach the additional issues.[20] On May 22, 2020, the CIT sustained Commerce's First Redetermination Results in full.[21] The domestic interested parties appealed the CIT's decision on the amount of a post-sale price adjustment, the only issue addressed by Commerce in the First Redetermination Results.

On July 20, 2021, the CAFC reversed and remanded the CIT's decision sustaining Commerce's decision to, under protest, grant Borusan the full amount of its claimed post-sale price adjustment, as reported in the company's home market sales data.[22] The CAFC held that

---

[16] *Id.* at 1412.
[17] *Id.* at 1402-1403.
[18] *Id.*
[19] *Id.* at 1403.
[20] *See* First Redetermination Results at 11.
[21] *See Borusan II*.
[22] *See Borusan III*, 5 F. 4th at 1377.

Commerce's original decision granting a *partial* post-sale price adjustment was supported by substantial evidence and in accordance with law.[23]

**III.   ANALYSIS**

Consistent with *Borusan III*, we reverted to our decision in the *Final Determination* to grant Borusan a *partial* post-sale price adjustment. Additionally, we removed the adjustment to Borusan's COP based on a finding of a PMS for the purposes of the sales-below-cost test.

In the *Final Determination*, Commerce concluded that the weight of the evidence on the record of the LTFV investigation demonstrated the existence of a cost-based PMS concerning HRC with respect to the individual and cumulative effects of: (1) the Government of Turkey's control of Eregli Demir Celik Fabrikiler Ticaret A.S., the largest producer of flat-rolled steel in Turkey, and its affiliate Iskenderun Demir ve Celik A.S.; (2) Turkish subsidies on the HRC and plate inputs; and (3) Turkish imports of HRC and plate from Russia, as a result of Chinese overcapacity. However, because the Court directed Commerce that it may not adjust Borusan's COP based on its PMS finding for purposes of the sales-below-cost test,[24] we have recalculated Borusan's estimated weighted-average dumping margin without a PMS adjustment to the COP. As a result of granting Borusan a partial post-sale price adjustment and removing the adjustment to Borusan's costs based on the PMS finding, Borusan's estimated weighted-average dumping margin is zero percent.[25]

Borusan's estimated weighted-average dumping margin would not increase were Commerce to adjust its calculations to address the remaining issue remanded by the Court (*i.e.*, U.S. date of sale). Accordingly, because a reexamination of the U.S. date of sale issue does not

---

[23] *Id.*
[24] *See Roses*, 774 F. Supp. at 1381.
[25] *See* Memorandum, "Calculations for Borusan Mannesmann Boru Sanayi ve Ticaret A.S. Pursuant to Draft Results of Second Redetermination," dated September 22, 2021.

affect the ultimate outcome of these final results of redetermination (*i.e.*, a negative finding of dumping for Borusan resulting in its exclusion from the order), the U.S. date of sale is no longer an open issue and it need not be addressed for purposes of these final results of redetermination.[26]

## IV.   INTERESTED PARTY COMMENTS

On September 22, 2021, Commerce released its draft results of redetermination and invited interested parties to comment. On September 28, 2021, we received comments from the domestic producers[27] and Borusan.[28] These comments are summarized below.

**Comment 1:   PMS Adjustment**

*Domestic Producers' Comments*

- Commerce should continue to make a PMS adjustment to Borusan's costs.[29]
- The Court erred in its holding that the statute permits a PMS adjustment to be made only when normal value is based on constructed value (CV) and not when the sales-below-cost test is utilized.
- Congress passed the Trade Preferences Extension Act of 2015 (TPEA) to address, among other things, the problem of distorted COP in antidumping duty proceedings. Accordingly, Commerce has broad, flexible powers to address PMS distortions.[30]
- While the Court has found Commerce's application of a PMS adjustment unlawful when the sales-below-cost test is utilized in other cases, certain of these cases have been appealed to the CAFC.  Therefore, until the CAFC rules definitively on the issue, Commerce should continue to apply a PMS adjustment where the sales-below-cost test is utilized.[31]
- Prior decisions to the contrary are not supported by the statute, violate canons of statutory construction, have the practical effect of rewriting the statute, and leave the agency in the compromised situation that the TPEA was intended to prevent.[32]  Thus, absent a statutory

---

[26] *See Roses*, 774 F. Supp. at 1381; and *Borusan II* at 13 ("By Commerce's determination that a properly-calculated post-sale price adjustment renders {Borusan's} estimated weighted-average dumping margin *de minimis*, {Borusan} has secured the maximum possible relief to which it may be entitled … namely … its merchandise 'will be excluded from the underlying antidumping duty order'"; *see also Extension*.
[27] The domestic producers are members of the American Line Pipe Producers Association.
[28] *See* Borusan's Letter, "BMB's Comments on Second Draft Remand Redetermination," dated September 28, 2021 (Borusan's Redetermination Comments); and the Domestic Producers' Letter, "Comments on Draft Results of Remand Redetermination," dated September 28, 2021 (Domestic Producers' Redetermination Comments).
[29] *See* Domestic Producers' Redetermination Comments at 3.
[30] *Id*. at 3 and 12.
[31] *Id*. at 5-6.
[32] *Id*. at 14.

prohibition against Commerce's application of a PMS adjustment for purposes of the sales-below-cost test, it cannot be said that Congress has spoken directly to the precise question at issue.[33]

- The CAFC has consistently recognized that a congressional mandate in one section and silence in another leaves the question to the agency's discretion.[34]
- It is unreasonable that Commerce would have the authority to correct for distortions in the COP data when CV is utilized but would be powerless to address the same distortions when it is not. Moreover, the statute is intended to give Commerce flexible powers to address PMS distortions and, therefore, it should be left to the agency's discretion on how and when to address those distortions.[35]

Borusan did not comment on this issue.

**Commerce's Position:**

As noted above, the Court determined that Commerce's PMS adjustment to the reported cost of HRC for purposes of a sales-below-cost test was unlawful and held that Commerce may not adjust costs based on a PMS for the purposes of the sales-below-cost test. Consistent with *Borusan I*, for these final results of redetermination, we continue to remove the PMS adjustment to Borusan's costs based on the cost-based PMS finding.

**Comment 2:    U.S. Date of Sale**

*Domestic Producers' Comments*

- Efficiency and fairness require that Commerce address the U.S. date of sale issue on remand.[36]
- Commerce appropriately selected invoice date as Borusan's U.S. date of sale in the underlying LTFV investigation and should maintain that finding on remand.[37]

*Borusan's Comments*

- The Court directed Commerce to address the U.S. date of sale issue on remand.[38]

---

[33] *Id*. at 9.
[34] *Id*. at 8-11 (citing *JBF RAK LLC v. United States*, 790 F. 3d 1358, 1363 (Fed. Cir. 2015); and *Thai Plastic Bags Indus. Co. v. United States*, 746 F. 3d 1358, 1362-63 (Fed. Cir. 2014)).
[35] *Id*. at 13-14.
[36] *Id*. at 16.
[37] *Id*. at 14-15.
[38] *See* Borusan's Redetermination Comments at 2.

7

- The holding of *Roses* should not apply in this case. By declining to address all of the issues raised in *Borusan I*, Commerce appears to seek to prolong this matter through a continued piecemeal litigation of these issues.[39]

**Commerce's Position:**

We continue to find that, because Borusan's estimated weighted-average dumping margin is zero percent after granting Borusan a partial post-sale price adjustment and removing the PMS adjustment to its costs, the U.S. date of sale is not an open issue and need not be addressed for purposes of these final results of redetermination.[40]

We also disagree with Borusan that the holding of *Roses* should not apply in this case. In *Roses*, the Court found that the determination of the benchmark and benefit in a countervailing duty (CVD) proceeding was a separate issue from whether a program was countervailable; however, the Court then determined that forcing the agency to calculate this amount where it would have no effect on the outcome would impose a needless expense and waste the agency's time.[41] Accordingly, the Court found that it was not necessary for Commerce to find a benchmark and calculate a benefit when it would have no impact on the calculation of the CVD rate. Similarly, in *Borusan II*, the Court held that, because "Commerce's determination that a properly-calculated post-sale price adjustment renders {Borusan's} estimated weighted-average dumping margin *de minimis*, {Borusan} has secured the maximum possible relief to which it may be entitled … namely … its merchandise 'will be excluded from the underlying antidumping duty order.'"[42] On remand, we have determined that Borusan's estimated weighted-average dumping margin is zero percent; it is unnecessary for Commerce to make an additional adjustment that would have no material effect on this rate. Indeed, as Borusan

---

[39] *Id*. at 4.
[40] *See Roses*, 774 F. Supp. at 1381; and *Borusan II* at 13; *see also Extension*.
[41] *See Roses*, 774 F. Supp. at 1381.
[42] *See Borusan II* at 13.

concedes, each of the issues raised in litigation leads to a *de minimis* finding, and Borusan would not advocate for a position that increases its margin above *de minimis*.[43]

## V. FINAL RESULTS OF REDETERMINATION

Consistent with the instructions of the Court, we have continued to recalculate Borusan's estimated weighted-average dumping margin by allowing a partial post-sale price adjustment and removing the cost-based PMS adjustment to Borusan's costs for purposes of the sales-below-cost test. As a result of our redetermination, Borusan's estimated weighted-average dumping margin is zero percent. Because we continue to find that Borusan did not sell subject merchandise at LTFV during the POI, the merchandise produced and exported by Borusan will continue to be excluded from the antidumping duty order.[44] Finally, this change to Borusan's estimated weighted-average dumping margin does not change the all-others rate from the First Redetermination Results, which continues to be 2.57 percent.[45]

11/1/2021

X _____

Signed by: RYAN MAJERUS

_____
Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties of the
 Assistant Secretary for Enforcement and Compliance

---

[43] *See* Borusan's Redetermination Comments at 4-5.
[44] Following *Borusan II*, Commerce issued a *Timken* notice regarding Borusan's exclusion from the antidumping duty order, pending resolution of this litigation. *See Large Diameter Welded Pipe from the Republic of Turkey: Notice of Court Decision Not in Harmony With Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination Pursuant to Court Decision; and Notice of Revocation of Antidumping Duty Order, in Part*, 85 FR 35262 (June 9, 2020).
[45] Commerce also revised the all-others rate in this notice. *Id.*, 85 FR at 35263.